# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**HOPE GAS, INC.,**
**Employer Below, Petitioner**

**FILED**

May 7, 2018
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)    No. 17-1095** (BOR Appeal No. 2052103)
(Claim No. 2015024887)

**JUSTIN ANDREW FETTY,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Hope Gas, Inc., by Jeffrey B. Brannon, its attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Justin Andrew Fetty, by Vincent Trivelli, his attorney, filed a timely response.

The issue on appeal is compensability. The claims administrator rejected the claim on April 21, 2015. The Office of Judges reversed the decision in its July 3, 2017, Order and held the claim compensable for left eye injury resulting in fungal infection. The Order was affirmed by the Board of Review on November 17, 2017. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Fetty, a town plant representative, injured his left eye in the course of his employment on February 16, 2015. An OSHA injury log indicates Mr. Fetty got fiberglass in his eye and was placed off work. The Reportable Lost Day Case indicates Mr. Fetty was installing heat tape on February 16, 2015. The next day, he reported to his supervisor that his eye was bothering him and that he must have gotten fiberglass in it the day before. Mr. Fetty declined medical care as this had happened before and resolved itself. An incident report was filed which stated that he rubbed his left eye after installing heat tape. Fiberglass got into his eye and caused irritation, redness, and itching. An additional description report completed by Mr. Fetty's

1

supervisor, Terry Ellis, indicates Mr. Fetty got fiberglass in his eye and was seeking treatment from an eye specialist.

Mr. Fetty sought treatment from MedExpress on February 19, 2015, where he was diagnosed with conjunctivitis due to fiberglass in the left eye. There were no abrasions seen on the eye. A February 23, 2015, treatment note by David George, M.D., indicates Mr. Fetty suffered from acute iritis in the left eye as well as posterior uveitis[1]. He was given medications and two days later, his eye was feeling better. His vision was still blurry but improving.

A treatment note by Swarupa Kancherla, M.D., dated March 2, 2015, indicates Mr. Fetty presented with blurry vision, light sensitivity, and pressure in the left eye. He reported that he got fiberglass in his eye and started losing vision a few days later. Dr. Kancherla noted that Mr. Fetty was previously diagnosed with infection after surgery and recurrent cellulitis. Dr. Kancherla diagnosed endophthalmitis[2] of the left eye. He noted that getting fiberglass in the eye may be a coincidental component of the condition as endophthalmitis usually occurs in patients who have underlying diseases. However, Mr. Fetty had none of those underlying illnesses. Dr. Kancherla found that a fungal infection was highly likely. Joseph Martel, M.D., treated Mr. Fetty for panuveitis[3] in the left eye, likely endogenous fungal endophthalmitis from March 2, 2015, through June 9, 2015.

On June 18, 2015, Roger Anderson, M.D., stated in a letter that Mr. Fetty got fiberglass in his eye, which scratched his cornea and resulted in a fungal infection. The infection required hospitalization, surgery, and IV antibiotics. Mr. Fetty sustained permanent vision loss in his left eye. On December 29, 2015, Dr. Martel noted that Mr. Fetty had left retina damage that is not reversible. This will result in depth perception difficulties for life.

In an undated file review, Ghasan Dagher, M.D., stated that after Mr. Fetty got fiberglass in his eye and performed an eye wash, he likely got all of the foreign material out of his eye. The most likely cause of the left eye symptoms is autoimmune panuveitis. He noted that cultures showed no fungal or bacterial growth. Dr. Dagher noted that Mr. Fetty has an autoimmune bowel disease and non-infections uveitis is a similar autoimmune disease that affects the tissue of the eye. Dr. Dagher found that there is no way to determine if a piece of fiberglass got into Mr. Fetty's eye. There was no sign of abrasion or a foreign body in the eye when he was treated at MedExpress three days after the incident. Dr. Dagher stated that an extraocular injury does not occur without penetration of the eye globe. Therefore, if fiberglass did penetrate the eye, there would have been fibers left behind or evidence of a scratch. Dr. Dagher's impression was fungal endogenous panuveitis. He opined that there is no connection between Mr. Fetty's panuveitis and external fiberglass exposure in the eye. He noted that neither Drs. George nor Martel found a causal connection between the fiberglass incident and the panuveitis.

---

[1] Uveitis is an infection in the middle layer of the eye.
[2] Endophthalmitis is inflammation of the interior of the eye.
[3] Panuveitis is inflammation of the uveal tract of the eye.

A hearing was held before the Office of Judges on July 19, 2016, in which Mr. Fetty testified that he was working around fiberglass when he got sweat or water in his eye and wiped it away. He felt like something had cut his eye. He reported the injury to his supervisor and sought treatment a few days later. He returned to work in July of 2015 but kept bumping into things, reading things wrong, and doing things incorrectly. Mr. Fetty stated that he was placed off of work until a medical evaluation could be done to see if he was capable of driving a company vehicle. He testified that prior to this incident, he had never sought treatment for his eyes. Mr. Fetty alleged that when he sought treatment at MedExpress, he was told he had a small scratch in his eye, which led to an infection.

In a September 15, 2016, email, Dr. Anderson stated that he has thirty years of experience treating infectious diseases. He stated that Mr. Fetty has no immune compromise and references in his medical record to Crohn's disease or ulcerative colitis are incorrect. Dr. Anderson stated that mold contamination of fiberglass is well-documented. Mr. Fetty was treated for a fungal infection following the compensable injury. Though the sample from his eye was negative it is very common for fungal infections to fail to produce growth when cultured, and Mr. Fetty responded to anti-fungal medication. Dr. Anderson opined that Mr. Fetty's good health and negative blood cultures indicate the infection did not originate from within him. Dr. Anderson commented on Dr. Dagher's findings. Dr. Anderson stated that an isolated fungal infection, like Mr. Fetty had, would cause less pain than a bacterial infection. There is no evidence the infection came from within Mr. Fetty's body because there was no evidence of blood borne or other infections, and he had no immune system abnormalities. Dr. Anderson asserted that the only plausible explanation for Mr. Fetty's eye infection is direct contact with fungal contaminated fiberglass.

In a February 22, 2017, supplemental report, Dr. Dagher stated that Dr. Martel did not consider the possibility of exogenous endophthalmitis or any connection to fiberglass exposure. Dr. Dagher found that the medical records show Mr. Fetty was extensively treated for infection in his groin area and was supposed to have a colonoscopy to rule out Crohn's disease and ulcerative colitis. In regard to Dr. Anderson's report, Dr. Dagher stated that Mr. Fetty's eye was found to be normal and scratch free when it was examined a few days after the incident occurred. Dr. Dagher found that Dr. Martel diagnosed chorioretinitis, which is an idiopathic inflammation of the eye tissue. Dr. Dagher asserted that the fact that Mr. Fetty was exposed to fiberglass is coincidental. Dr. Dagher stated that absent an injury to the eye that pierces the tissue, there is no way for an infection to get into the posterior segment of the eye.

Dr. Anderson testified in a deposition on March 9, 2017, that he first treated Mr. Fetty for groin infection following a surgical accident. The infection resolved. Dr. Anderson stated that following the left eye injury, Mr. Fetty was diagnosed with conjunctivitis and given medications which were ineffective. He was then treated for a bacterial infection, which was also ineffective. Dr. Anderson stated he reviewed the initial treatment notes for MedExpress and at that time, Mr. Fetty was three days post-incident. The eye heals very quickly and the fungal infection could have already been in the eye. Dr. Anderson clarified that Mr. Fetty does not have Crohn's disease or ulcerative colitis as those diagnoses were mere speculations. Dr. Anderson reviewed

3

Dr. Martel's report and opined that there is no internal source for Mr. Fetty's infection. He asserted that there is literature on the fungal contamination of fiberglass causing infection.

In a letter, Dr. Anderson clarified that a fungal infection of the eye is rare in a person with a normal immune system, such as Mr. Fetty. He stated that the sequence of events in this case is consistent with the normal progression of a fungal infection in the eye. When Mr. Fetty was treated for a fungal infection, his condition immediately improved and then resolved. Dr. Anderson reiterated that it is common for fungal infection cultures to be negative even when infection is present.

The Office of Judges reversed the claims administrator's rejection of the claim and held the claim compensable for left eye injury resulting in fungal infection on July 3, 2017. It found that it is undisputed that Mr. Fetty was exposed to fiberglass at work on February 16, 2015. Dr. Dagher stated that there is no way to know if a piece of fiberglass got into his eye and there is no evidence in the record that fiberglass caused Mr. Fetty's panuveitis. Dr. Dagher opined that if fiberglass caused the left eye condition, the piece or pieces would still have been stuck in the eye when he was seen at MedExpress three days later. The Office of Judges found that Dr. Anderson disagreed with Dr. Dagher's opinion. Dr. Anderson opined that Mr. Fetty's left eye was scratched by a piece of fiberglass which caused the introduction of a fungus into the eye. The progression of the infection was consistent with his symptoms. The Office of Judges found that Dr. Anderson has thirty years of experience in treating infectious diseases and has treated Mr. Fetty for seven years. He was therefore found to be in the best position to determine the cause of the left eye condition, especially given that Dr. Dagher never actually examined Mr. Fetty. The Office of Judges further found that Drs. Dagher and Martel based their opinions on the conclusion that Mr. Fetty has an autoimmune disease, a fact that has no support in the medical records and was refuted by Dr. Anderson. The Office of Judges therefore found that a preponderance of the evidence indicates Mr. Fetty sustained a compensable left eye injury in the course of his employment. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on November 17, 2017.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. Dr. Anderson was in the best position to provide an explanation of Mr. Fetty's left eye condition. He is well versed in infectious processes and has treated Mr. Fetty for seven years. His opinion is supported by the evidence of record and the Office of Judges was not wrong to rely upon it.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

4

**ISSUED: May 7, 2018**

**CONCURRED IN BY:**
Chief Justice Margaret L. Workman
Justice Robin J. Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker